# STATE OF MICHIGAN

# COURT OF APPEALS

DIANA SAAD,

       Plaintiff-Appellee,

v

FARMERS INSURANCE EXCHANGE,

       Defendant-Appellant.

UNPUBLISHED
December 18, 2018

No. 338888
Wayne Circuit Court
LC No. 15-006563-NF

Before: MURRAY, C.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

In this action pursuant to the no-fault act, MCL 500.3101 *et seq.*, defendant Farmers Insurance Exchange appeals as of right the trial court's judgment in favor of plaintiff Diana Saad after a jury trial. We affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff received medical treatment for pain in her back, neck, head, shoulder, and legs after being injured in an automobile accident. Defendant, the no-fault insurer, refused to pay benefits after reviewing plaintiff's medical records and requiring plaintiff to submit to an independent medical examination (IME). Plaintiff sued, seeking payment of her medical expenses, attendant care, household replacement services, and wage loss. Around three months before trial, plaintiff voluntarily dismissed her claims for everything but her medical care. Subsequently, plaintiff moved the trial court in limine to preclude defendant from introducing evidence regarding plaintiff's voluntarily dismissed claims. The trial court granted that motion despite defendant's argument that the evidence was relevant to prove that plaintiff actually was not injured but was using her continued medical care so that she could collect money for household replacement services, attendant care, and wage loss.

Over the course of four days of trial the jury was presented evidence from four of plaintiff's treating doctors who testified that plaintiff was injured and properly treated, the doctor that performed plaintiff's IME and concluded she was not injured but was malingering, a second doctor who also opined that plaintiff was not injured in the accident, two claims adjusters for defendant who testified that plaintiff had not properly supported her claims and that her claims appeared to be fraudulent, and plaintiff herself. Plaintiff testified that she was injured and her various treatments, including physical therapy, pain injections, and Botox, were necessary to alleviate her pain. Defendant cross-examined plaintiff with evidence that plaintiff went on two

-1-

vacations and cared for her children while injured, and with medical records that suggested that plaintiff had been suffering the problems of which she complained for many years. The jury awarded plaintiff all of her medical costs along with interest and late fees. This appeal followed.

## II. EVIDENCE OF VOLUNTARILY DISMISSED CLAIMS

Defendant argues that the trial court abused its discretion by precluding defendant from introducing evidence of plaintiff's claims for attendant care, household replacement services, and wage loss. We disagree.

## A. STANDARD OF REVIEW

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 571; 918 NW2d 545 (2018) (quotation marks and citations omitted). "Any error in the admission or exclusion of evidence does not require reversal unless a substantial right of a party is affected or unless failure to do so would be inconsistent with substantial justice." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 541; 854 NW2d 152 (2014), citing MRE 103(a); MCR 2.613(A).

## B. APPLICABLE LAW & ANALYSIS

The trial court did not abuse its discretion in precluding the challenged evidence. "To be admissible, evidence must be relevant." *Rock v Crocker*, 499 Mich 248, 256; 884 NW2d 227 (2016), citing MRE 402. "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Rock*, 499 Mich at 256, quoting MRE 401. While relevant evidence generally is admissible, such "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *In re Conservatorship of Brody*, 321 Mich App 332, 348; 909 NW2d 849 (2017) (quotation marks omitted), citing MRE 403.

Defendant's theory is that the disputed evidence would have shown that plaintiff had a monetary interest in continuing to seek medical treatment. With respect to plaintiff's claims for household replacement services and attendant care, we can see no relevance under the theory presented by defendant. By their very nature, attendant care and household replacement services are payable to the individuals that perform those services. The claims for attendant care and household replacement services did not make it "more probable . . . than it would be without the evidence" that plaintiff was lying to doctors to seek a monetary reward for herself. MRE 401. Consequently, evidence of those claims was properly determined to be irrelevant and inadmissible. MRE 401; MRE 402; *Rock*, 499 Mich at 256.

As to plaintiff's claim for wage loss, assuming without deciding that the evidence was relevant, the trial court did not abuse its discretion in excluding it pursuant to MRE 403.[1] The trial court's decision was not outside of the range of reasonable and principled outcomes when it determined that the minimal probative value of plaintiff's wage loss claim was substantially outweighed by the danger of confusing or misleading the jury regarding the issues to be tried. See *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008). The trial was specifically limited to the issue of whether plaintiff's medical treatment was reasonable and necessary under the no-fault act. Defendant presented an array of evidence regarding its theory of defense—that plaintiff was malingering for financial benefit—including testimony from two doctors, testimony from two experienced claims adjusters, and a great deal of plaintiff's past and present medical records. The evidence introduced by defendant included the plaintiff's complained of maladies that she had relied upon to support her prior claim for wage loss, i.e., that she could not sit or stand for long periods of time. Therefore, evidence of the wage loss claim was of limited probative value, while having a reasonably high probability of confusing jurors. The jury was called on to answer whether plaintiff's treatment was payable, not whether her wage losses were payable. It would be easy for a jury to become confused on the issues germane to trial when being presented with claims for wage loss about which there was no dispute. See *id*.; MRE 403. Consequently, we cannot say that the trial court abused its discretion.[2]

## III. JURY SELECTION

Defendant argues that the trial court erred during jury selection necessitating reversal and a new trial. We disagree.

## A. STANDARD OF REVIEW & APPLICABLE LAW

Issues involving jury selection are constitutional in nature, which we review de novo. *Pellegrino v AMPCO Sys Parking*, 486 Mich 330, 338; 785 NW2d 45 (2010). Similarly, "we review de novo . . . the interpretation of statutes and court rules." *Sanders v McLaren-Macomb*, 323 Mich App 254, 265; 916 NW2d 305 (2018).

---

[1] We are less convinced that evidence of plaintiff's wage loss claims are irrelevant. See *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 668; 819 NW2d 28 (2011) (quotation marks omitted) ("The threshold [for relevancy] is minimal: any tendency is sufficient probative force."); MRE 401.

[2] Even if the evidence of plaintiff's wage loss claims was not properly excluded pursuant to MRE 403, we still would refuse to reverse the judgment because defendant was not prejudiced by the decision. *Landin*, 305 Mich App at 541; MRE 103(a). Considering the significant evidence just discussed which was admitted at trial, it is just not reasonably probable that the jury would have reached a different result if it was able to consider plaintiff's claims for the aforementioned benefits. Therefore, even if the evidence was admissible or not properly excluded, reversal is not warranted. *Landin*, 305 Mich App at 541; MRE 103(a).

"Voir dire is the process by which litigants may question prospective jurors so that challenges to the prospective jurors can be intelligently exercised." *Bynum v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002). "The trial court has discretion in both the scope and the conduct of voir dire." *People v Tyburksi*, 445 Mich 606, 619; 518 NW2d 441 (1994). Our Supreme Court has stated that the conduct and scope of voir dire "does not lend itself to hard and fast rules regarding what is acceptable and what is unacceptable practice. Courts indeed should be allowed wide discretion in the *manner* they employ to achieve the goal of an impartial jury." *Id*. at 623. Despite outlining a clear method for selecting a jury, the Court Rules also allow that, "[p]rospective jurors may be selected by any other fair and impartial method directed by the court or agreed to by the parties." MCR 2.511(A)(4).

## B. ANALYSIS

Defendant first contends that the trial court erred by requiring defense counsel to use a peremptory strike on a juror that was excusable for cause. That argument by defendant is without merit because it is not true. The trial court required the parties to request strikes for cause one at a time, after each round of questioning. For the juror at issue here, defense counsel had already excused a juror for cause during that round of the voir dire. When the trial court informed defense counsel that he could only do one at a time, he objected. The trial court explained that he would get another turn after the newly-opened seats on the jury had been filled and additional questions had taken place. Defendant contends that its attorney did not understand the instruction, and believed that the juror in question would remain on the jury if defense counsel failed to use his peremptory strike.

The record shows that defense counsel's alleged misunderstanding did not actually occur. First, before the issue arose, plaintiff had excluded a juror for cause in the exact manner defense counsel claims he did not know was available. Second, the trial court clearly explained that while strikes for cause were taken one at a time, there was no limitation on how many or when a given juror could be stricken. Third, defendant exhibited his understanding of the process by later excusing a prospective juror for cause a round after that specific juror was called to the jury box and questioned. Therefore, while the trial court's system may not have been standard, defendant was not prejudiced by being required to wait for each new round to dismiss a potential juror for cause. Ultimately, defendant could request that any juror be stricken for cause. But, as to the specific juror in question, defense counsel simply chose not to wait.

Next, defendant argues that the trial court erred by requiring defense counsel to exercise his peremptory strikes before subsequent seats were filled and the prospective jurors questioned. Defendant's argument is premised on the allegation that he believed his peremptory strikes would have been waived had he not used them immediately. Indeed, in a typically formatted jury selection, when a party passes on using a peremptory strike, that party has waived any further challenge to those prospective jurors then in the jury box. MCR 2.511(E)(3)(b). However, in the system used by the trial court here, it is clear from the record that a peremptory strike could be used at any time. Defense counsel demonstrated his understanding of the system by passing on using a peremptory during one round, and then later using a peremptory strike on a juror that already was seated when he previously passed on an opportunity to use a peremptory strike with that juror. Thus, the record does not support defendant's allegation that he was being

forced to use peremptory strikes or waive them before seats were filled and prospective jurors questioned.

Trial courts are "allowed wide discretion in the *manner* they employ to achieve the goal of an impartial jury." *Tyburksi*, 445 Mich at 623. There is nothing in the record to suggest that the manner of impaneling the jury used by the trial court was manifestly improper. Instead, it appears that the trial court simply was exercising its wide discretion in formulating the process by which the impartial jury was chosen. *Id*.; MCR 2.511(A)(4). Where, as here, the record shows that the parties understood the process and it ultimately resulted in a system that weeded out potentially biased jurors, the practice was not improper. See *Tyburksi*, 445 Mich at 623.

Defendant also argues that the trial court erred by curtailing defense counsel's questioning of the potential jurors. The record shows that, during voir dire, defendant repeatedly and consistently violated the trial court's direction to keep questions general and to not ask questions specific to the case. So long as the method of voir dire is "fair and impartial," the trial court's decision to limit the questioning of jurors to issues germane to their potential biases or abilities to serve properly, and not regarding the specific facts of the case, was not erroneous. MCR 2.511(C); *Bynum*, 467 Mich at 283. If anything, such a limitation was conducive to a "fair and impartial" method of selecting the jury. MCR 2.511(A)(4).[3]

In sum, the trial court did not commit any errors during jury selection and did not cause defendant any prejudice. *Bynum*, 467 Mich at 283.

## IV. JUDICIAL BIAS

Defendant next argues that the trial court pierced the veil of judicial impartiality, causing prejudice to defendant and requiring reversal and a new trial.[4] We disagree.

### A. STANDARD OF REVIEW & APPLICABLE LAW

---

[3] To the extent defendant argues that the trial court's repeated orders to defense counsel that he refrain from asking specific questions caused the jury to become biased against defendant, that argument is without merit. If there was anything that caused prejudice to defendant during jury selection, it was defense counsel's continuous violations of the trial court's directions to limit the questioning. "An appellant cannot contribute to error by plan or design and then argue error on appeal." *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 388; 554 NW2d 49 (1996).

[4] While we question whether this issue was properly raised before the trial court considering defendant objected to the trial court's rulings that now form the basis for defendant's claim of judicial bias but never moved the trial court for recusal or disqualification, we still will consider the issue because it ultimately is without merit and "is an issue of law for which all the relevant facts are available." *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015) (internal quotations omitted).

-5-

Typically, "[i]n reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews the court's application of those facts to the relevant law de novo." *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). "An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes." *Butler v Simmons-Butler*, 308 Mich App 195, 226; 863 NW2d 677 (2014). "[T]he party seeking disqualification has the burden of proving actual prejudice." *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995).

The question presented, essentially, is whether the trial court judge should have been disqualified and the judgment reversed based on exhibited bias. Pursuant to MRE 611(a), a trial judge "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." A trial judge exceeds its reasonable control over witness interrogation when it makes decisions that are "utterly arbitrary" or "unrelated to the nature and complexity of [the] case . . . ." *Barksdale v Bert's Marketplace*, 289 Mich App 652, 657; 797 NW2d 700 (2010), quoting *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 618 n 12; 792 NW2d 344 (2010).

"A trial judge is presumed to be fair and impartial, and any litigant who would challenge this presumption bears a heavy burden to prove otherwise." *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002). "A judge is disqualified when he cannot hear a case *impartially . . . .*" *Cain v Mich Dep't of Corrections*, 451 Mich 470, 494; 548 NW2d 210 (1996). "MCR 2.003(C) provides . . . grounds for disqualifying a judge . . . ." *Butler*, 308 Mich App at 226. Pursuant to MCR 2.003(C)(1)(a), "[d]isqualification of a judge is warranted . . . [if] [t]he judge is biased or prejudiced for or against a party or attorney."

"An actual showing of prejudice is required before a trial judge will be disqualified." *In re Forfeiture of $1,159,420*, 194 Mich App 134, 151; 486 NW2d 326 (1992). "This requirement has been interpreted to mean that disqualification is not warranted unless the bias or prejudice is both personal and extrajudicial." *Cain*, 451 Mich at 495. "Opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg v Rochester Mich Lodge No 2225 of the Benevolent & Protective Order of Elks*, 228 Mich App 20, 39; 577 NW2d 163 (1998). In fact, "judicial rulings, in and of themselves, almost never constitute a valid basis for" finding a judge to be biased. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). "A trial judge's erroneous ruling, even when 'vigorously and consistently expressed,' is not grounds for disqualification." *Ireland v Smith*, 214 Mich App 235, 249; 542 NW2d 344 (1995), quoting *Wayne Co Prosecutor*, 210 Mich App at 155.

## C. ANALYSIS

Defendant first argues that the trial court revealed its bias to the jury by instructing defendant's claims adjuster to respond to all questions asked of him with a "yes" or "no" answer. The record shows that the trial court never made such a demand. While the trial court did instruct the claims adjuster to answer a "yes" or "no" question with either option, the trial court

-6-

did not instruct the claims adjuster to answer *every* question in that manner. Rather, the trial court instructed the claims adjuster to "answer the questions directly." Instructing a witness to answer questions is well within the trial court's discretion to control the interrogation of witnesses pursuant to MRE 611(a). The trial court's decision was not "utterly arbitrary" or "unrelated to the nature and complexity of [the] case . . . ." *Barksdale*, 289 Mich App at 657, quoting *Rentenbach*, 287 Mich App at 618 n 12. Thus, the trial court's instructions were not improper. MRE 611(a); *Barksdale*, 289 Mich App at 657.

Next, defendant argues the trial court judge pierced the veil of impartiality by limiting defense counsel's ability to question plaintiff on her medical history. The record shows that, in the trial court's repeated instructions, defendant was not limited in asking plaintiff about her medical history, but merely was limited in asking questions requiring plaintiff to analyze and interpret medical records. In fact, the trial court specifically stated, "Okay, go ahead, ask—you can ask—read that whole thing (the medical history) and then read it sentence for sentence. Read it sentence for sentence, ask her did she tell them that and—and fine. I'll—we'll go with whatever she says." Defendant was not, however, permitted to read plaintiff the medical terminology in the patient history portion of the medical records and then ask plaintiff to interpret those words to determine if they fit with the pain she actually described. The trial court properly observed that plaintiff was not qualified to perform such interpretation.[5]

Once again, defendant, at best, misunderstood the trial court's rulings. The trial court allowed defendant to cross-examine plaintiff regarding her prior medical records in whatever manner defense counsel saw fit, so long as plaintiff was not asked to interpret them. That instruction was well within the trial court's discretion to control the interrogation of witnesses, and therefore, was not improper. MRE 611(a); *Barksdale*, 289 Mich App at 657.[6]

Defendant relies on the allegedly improper nature of the trial court's rulings regarding the claims adjuster's testimony and defendant's cross-examination of plaintiff to support its claim that the trial court exhibited judicial bias. However, the record reveals no such errors, and consequently, defendant's entire claim lacks merit. This is especially true because, as this Court has held, judicial rulings almost always are not sufficient to establish judicial bias. See *Armstrong*, 248 Mich App at 597.

---

[5] For the first time on appeal, defendant asserts that plaintiff likely was qualified to interpret medical terminology because of an admitted history of working at an urgent care facility. Because that argument never was presented to the trial court, we refused to consider it. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

[6] Defendant also directs us to a multitude of times when plaintiff objected to questioning and the trial court sustained the objection. Defendant seems to suggest that the trial court's repeated decisions on plaintiff's objections exhibited bias; yet, defendant does not provide any argument that the trial court's rulings were incorrect, only claiming that the repeated interruptions were detrimental to defendant's cross-examination. There simply is nothing in the record to support that allegation. The trial court typically ruled on the objections and then directed defendant to continue his questioning.

Having reviewed the entire record, there is nothing—and defendant has not identified anything—to suggest that defendant has overcome its heavy burden to prove that the trial court judge expressed bias against defendant and affected the outcome of trial. See *In re Susser Estate,* 254 Mich App at 237.

Affirmed.

/s/ Christopher M. Murray
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan