*In re* SUSSER ESTATE

Docket No. 234087. Submitted October 1, 2002, at Marquette. Decided December 3, 2002, at 9:10 A.M. Leave to appeal sought.

Betty Saari, as conservator of the estate of June Susser, a protected person, initiated proceedings in the Gogebic County Probate Court against Ronald and Hazel Marie Susser seeking a return to the estate of certain real and personal property that were once owned by June Susser and that Ronald Susser gave to himself through the exercise of a durable power of attorney granted to him by June Susser. The court, Joel L. Massie, J., entered a judgment for Saari after a jury returned a verdict that Ronald Susser had wrongfully converted the assets. Ronald and Hazel Marie Susser appealed.

The Court of Appeals *held*:

1. The trial court did not err in denying the Sussers' motion to dismiss and in instructing the jury that an agent acting under a power of attorney has a fiduciary duty to act in the principal's best interests. It is well established that powers of attorney are to be construed in accordance with the principles governing the law of agency. One of those principles is that a person who undertakes to act as agent for another may not pervert his powers to his own personal ends and purposes without the consent of the principal after a full disclosure of the details of the transaction.

2. The trial court did not deny the Sussers due process and a fair trial when it refused to allow them to question Saari's main witness regarding a "thumbs down" gesture the witness allegedly made as a spectator during the Sussers' argument on a motion for a mistrial. The claim implies that the trial court was influenced by the witness, who had managed the trial judge's campaign for election to the bench. However, in the absence of a more specific demonstration of bias or prejudice, the Sussers have not overcome the presumption of judicial impartiality.

3. The trial court did not deprive the Sussers of a fair trial by denying their motion to disqualify Saari's attorney, who had drafted June Susser's latest will. Although MRPC 3.7(a) forbids a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness, the Sussers failed to show that the attorney was a necessary witness on any relevant issue.

4. The trial court did not abuse its discretion in allowing Saari to ask leading questions of June Susser during direct examination. A trial court may allow a fair amount of leeway in asking questions of elderly and infirm witnesses. The questions posed by Saari to June Susser were no more leading than necessary given the age and physical condition of the witness.

5. The trial court did not abuse its discretion in excluding portions of the deposition testimony of an expert for the Sussers concerning factors considered by an attorney in determining whether one who is executing a will is acting under undue influence. Expert testimony cannot express a legal definition or standard, and the excluded expert testimony in this case set forth standards for determining whether a grantor is being subjected to undue influence by a grantee.

Affirmed.

*Tercha & Daavettila* (by *Robert T. Daavettila*) for Betty Saari.

*Marks and Legal Associates* (by *Marvin E. Marke*) for Ronald and Hazel Marie Susser.

Before: HOOD, P.J., and BANDSTRA and O'CONNELL, JJ.

PER CURIAM. Respondents appeal as of right from a judgment, following a jury trial, ordering the return of certain assets to the estate of June Susser, a protected person. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

This Court previously affirmed the appointment of petitioner Betty Saari as conservator of the estate of June Susser in a prior appeal by respondent Ronald Susser, who is June's son. *In re Susser Estate*, unpublished opinion per curiam of the Court of Appeals, issued July 10, 2001 (Docket No. 222270). While that appeal was pending, petitioner brought an action claiming that Ronald breached his fiduciary duty to his mother by using a durable power of attorney to gift himself a substantial portion of June's financial

portfolio. Petitioner also claimed that Ronald wrongly recorded a quitclaim deed to June's house, though he knew that June did not intend for him to take the deed until her death. The jury found that Ronald had wrongfully converted these assets, and the trial court entered judgment for petitioner. Respondents now appeal, claiming a variety of errors in the trial court proceedings.

## II. LEGAL ANALYSIS

### A. FIDUCIARY DUTY ATTENDANT A POWER OF ATTORNEY

Respondents first contend that the trial court erred in denying their motion to dismiss and in instructing the jury that an agent acting under a power of attorney has a fiduciary duty to act in the principal's best interests.[1] In each case, respondents contend that because the power of attorney did not expressly impose a fiduciary duty on Ronald, the trial court erred in allowing the jury to "second guess" his transactions. We disagree.

In *VanderWall v Midkiff*, 166 Mich App 668, 677-678; 421 NW2d 263 (1988), this Court held that an attorney in fact could be held liable to her principal's estate if she converted his funds to herself without his authorization:

It is well established . . . that powers of attorney are to be construed in accordance with the principles governing the law of agency. *One of those principles is that a person who undertakes to act as agent for another may not pervert his powers to his own personal ends and purposes without the consent of the principal after a full disclosure of the details of the transaction.* Hence, if [the attorney in fact] acted in

---

[1] Respondents do not otherwise argue that the instructions given were incorrect.

her own interests and not under the direction of [her principal], she may be liable to [the principal's] estate for the monies wrongfully obtained or transferred. [Emphasis added.]

Similarly, in *In re Conant Estate*, 130 Mich App 493, 498; 343 NW2d 593 (1983), this Court noted that a fiduciary relationship existed between a principal and her attorney in fact "by virtue of the grant of a general power of attorney."

Although neither *VanderWall* nor *Conant* bind us, see MCR 7.215(I)(1), we find their conclusion that an attorney in fact acting under the authority of a general power of attorney is in a fiduciary relationship with the principal to be generally accepted without question. One inference arising out of an agency relationship is that the agent is to act only for the principal's benefit. See 1 Restatement Agency, 2d, § 39, p 130.

> The agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking. Among the agent's fiduciary duties to the principal is . . . the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them. [Restatement, § 13, comment a, p 58.]

These principles of agency are generally considered applicable to an attorney in fact acting pursuant to powers of attorney. See, generally, 3 Am Jur 2d, Agency, §§ 21-32, pp 445-453.[2]

---

[2] The cases respondents cite in support of their position, *Bergman v Dykhouse*, 316 Mich 315; 25 NW2d 210 (1946), and *Greer v Parks*, 300

Accordingly, we conclude that Ronald's fiduciary duty to June arose as a matter of law from the grant of June's power of attorney. As with the grant of any other agency rights and responsibilities, a fiduciary obligation was established without need for the document itself to include language expressly imposing a fiduciary duty. The trial court did not err in denying the motion for dismissal or in instructing the jury regarding the fiduciary obligation owed by Ronald to June.

### B. JUDICIAL BIAS

Respondents next argue that the trial court denied them due process and a fair trial when it refused to allow them to question witness Dennis Cossi, the attorney who drafted the power of attorney at issue here, regarding an improper hand gesture he allegedly made while sitting as a spectator in the courtroom.[3] In making this argument, respondents imply that the trial court's decision was improperly influenced by its prior relationship with Cossi, who managed the trial judge's campaign for election to the bench, and that, therefore, they were deprived of their constitutional right to a hearing before an unbiased and impartial decisionmaker. See *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Upon review de novo, we find no merit in respondents' assertion in this regard. See *In re Carey*, 241 Mich App 222, 225-226; 615 NW2d 742 (2000) (the determination whether

---

Mich 492; 2 NW2d 476 (1942), do not involve issues of fiduciary duty and are not relevant to this question.

[3] According to respondents, Cossi gave the "thumbs down" signal during respondents' argument for a mistrial on the ground that counsel for petitioner utilized leading questions during direct examination of June Susser.

a party has been afforded due process is a question of law subject to review de novo).

A trial judge is presumed to be fair and impartial, and any litigant who would challenge this presumption bears a heavy burden to prove otherwise. *SC Gray, Inc v Ford Motor Co*, 92 Mich App 789, 810-811; 286 NW2d 34 (1979); see also *Cain, supra*. Here, the sole allegation of bias asserted by respondents is that petitioner's main witness was once affiliated with the trial judge's bid for election to the bench. However, other than the fact that the trial judge ruled against them on a contested issue, respondents point to no conduct by the trial judge demonstrating prejudice or bias. Because rulings against a litigant, even if erroneous, do not themselves constitute bias or prejudice sufficient to establish a denial of due process, see *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597-598; 640 NW2d 321 (2001), we cannot, in the absence of a more specific demonstration of bias or prejudice, conclude that respondents have overcome the presumption of judicial impartiality.[4] *Gray, supra*; *Cain, supra*.

### C. DISQUALIFICATION OF PETITIONER'S ATTORNEY

Respondents next claim that the trial court deprived them of a fair trial when it denied their motion to disqualify petitioner's attorney, Robert Daavettila. Again, we disagree.

Respondents maintain that Daavettila, as the attorney who drafted June's latest will, violated MRPC

---

[4] Our conclusion in this regard is supported by the fact that, in refusing to allow respondents to question Cossi concerning the alleged gesture, the trial court indicated that a similar gesture by Cossi's companion, which was actually witnessed by the court, did not influence its decision on the mistrial motion respondents were arguing at the time.

3.7(a) by acting as an advocate in a trial where he should have been a witness.[5] However, in *Smith v Arc-Mation, Inc,* 402 Mich 115, 118-119; 261 NW2d 713 (1978), our Supreme Court reversed a disqualification order issued pursuant to the predecessor to MRPC 3.7(a), DR 5-101(B), because the party seeking disqualification had not shown that the attorney's testimony was necessary. In doing so, the Court noted that the testimony allegedly sought from the attorney was available from other competent sources, and that the party seeking disqualification had not previously stated an intent to call the attorney as a witness. *Smith, supra* at 119.

Here, respondents similarly failed to indicate any intent to call Daavettila as a witness in this matter, or, more importantly, to show that Daavettila's testimony was "necessary." Respondents could have, and to a large extent did, elicit testimony regarding the circumstances surrounding the new will from other competent sources. Respondents cross-examined Saari extensively regarding that matter, and had the opportunity to cross-examine June as well.

Furthermore, although respondents emphasize their need to question Daavettila to explore the validity of June's new will, that issue is irrelevant. As the trial court pointed out, this case was not a will contest. If respondents are liable for the wrongful conversion of assets from June's estate, they are liable to return those assets regardless of who might ultimately receive them in the will. Accordingly, because respondents failed to show that Daavettila was a necessary witness on any relevant issue, the trial court did not

---

[5] MRPC 3.7(a) provides, in relevant part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ."

deprive respondents a fair trial by denying their motion to disqualify attorney Daavettila under MRPC 3.7(a).[6]

### D. PETITIONER'S USE OF LEADING QUESTIONS

Respondents next contend that the trial court erred in allowing petitioner to ask leading questions of June during direct examination. We review a trial court's decision to allow leading questions for an abuse of discretion. *Dehring v Northern Michigan Exploration Co, Inc*, 104 Mich App 300, 318-319; 304 NW2d 560 (1981).

Initially, we note that a trial court may allow a fair amount of leeway in asking questions of elderly and infirm witnesses, see, e.g., *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001), and, in this case, petitioner's questioning of June was no more leading than necessary given the age and physical condition of the witness.[7] Accordingly, we find no abuse of discretion in the trial court's decision to permit the use of leading questions.

Moreover, even assuming that the trial court abused its discretion in this regard, this Court has held that reversal may be predicated on the use of leading questions only where "prejudice or a pattern of eliciting inadmissible testimony" exists. *Id.* We have examined the transcript of June's testimony and

---

[6] Although respondents also assert that Daavettila's representation of both Saari and June Susser violated MRPC 1.7(b), they have failed to address the merits of that claim in their brief on appeal. Accordingly, the issue is waived. See *American Transmission v Channel 7 of Detroit, Inc*, 239 Mich App 695, 705; 609 NW2d 607 (2000).

[7] Although *Watson* involved the questioning of a child witness on direct examination by a prosecutor, we find the leeway granted a party in examining young children to be applicable by analogy to the questioning of elderly and infirm witnesses such as June Susser.

do not find that the leading questions were prejudicial to respondents, or that these questions were part of a pattern of eliciting inadmissible testimony. The leading questions were limited to developing the witness' testimony, which is permissible questioning under MRE 611(c)(1). Furthermore, contrary to respondents' arguments, the questions did not mirror the questions on the jury verdict form.

### E. EXCLUSION OF EXPERT TESTIMONY

We similarly find no abuse of discretion in the trial court's decision to exclude portions of the deposition testimony of John McCarthy, concerning the factors considered by an attorney in determining whether one who is executing a will is acting under undue influence. Expert testimony cannot express a legal definition or standard. *Downie v Kent Products, Inc*, 420 Mich 197, 205; 362 NW2d 605 (1984). McCarthy's testimony set forth standards for determining if a grantor is being subjected to undue influence by a grantee, and the trial court, therefore, correctly excluded it. We also find no merit to respondents' claim that McCarthy's testimony should have been admitted after petitioner was permitted to introduce deposition testimony explaining fiduciary duty. Contrary to the standards related by McCarthy in his testimony, the testimony introduced by petitioner was too general and basic to be regarded as setting forth a legal standard.

We affirm.