# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SELL Estate.

CAROLYN D. SWALLEY, Personal
Representative for the Estate of ALTON F. SELL,

UNPUBLISHED
August 4, 2015

Plaintiff-Appellee,

v

No. 321077
Montmorency Probate Court
LC No. 13-007010-CZ

STEPHEN A. SELL and EWA SELL,

Defendants-Appellants.

Before:  SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendants appeal as of right from the probate court's order granting partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of plaintiff.  We affirm.

## I.  FACTS AND PROCEEDINGS

On April 26, 2005, the decedent, Alton Sell, executed a will that was prepared and witnessed by Attorney Ronald Kirkpatrick.  On December 15, 2011, Alton executed a general durable power of attorney granting power of attorney to his son, Stephen Sell.  Likewise, on December 16, 2011, Gwendolyn Sell granted a power of attorney to Stephen.  The two powers of attorney are mirror images of each other.  On December 16, 2011, Stephen, as attorney-in-fact for Alton and Gwendolyn, executed a warranty deed by which his parents conveyed their homestead property to himself and his wife, Ewa Sell.  On April 23, 2012, Gwendolyn died and on January 5, 2013, Alton died.  The warranty deed was recorded on February 5, 2013.

Plaintiff thereafter filed a complaint in probate court requesting the court to quiet title to the subject parcel of property in Alton's estate and to award the estate damages for conversion, fraud, and breach of fiduciary duty.  Stephen admitted that he was acting in a fiduciary capacity and owed his principals a fiduciary duty at the time he was acting as their agent under the powers of attorney.  He also admitted that the powers of attorney prohibited the attorney-in-fact from making gifts on behalf of the principal.  Defendants averred, however, that the transfer of the

-1-

homestead property was on a contractual non-gift basis and was done in consideration of their care for Alton and Gwendolyn. There was no written agreement executed by Alton and Gwendolyn memorializing this alleged contract. The probate court found that the execution of the warranty deed violated applicable statutes and the power of attorney documents and thus granted partial summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(10), set aside the subject warranty deed, and quieted title to the subject parcel in the name of the estate. This appeal followed.

## II. STANDARD OF REVIEW

We review summary disposition rulings de novo. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013), and the same standard applies to the interpretation and application of statutes. *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). In deciding a summary disposition motion under MCR 2.116(C)(10), this Court considers all the evidence, affidavits, pleadings, admissions, and other information available in the record in a light most favorable to the nonmoving party. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 30-31; 651 NW2d 188 (2002). Summary disposition should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). Furthermore, we review for clear error a trial court's factual findings and review de novo questions of law. *Thomas v New Baltimore*, 254 Mich App 196, 201; 657 NW2d 530 (2002).

## III. ANALYSIS

MCL 700.1214, a provision of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, provides:

> Unless the governing instrument expressly authorizes such a transaction or investment, unless authorized by the court, except as provided in section 3713, 5421, or 7802, or except as provided in section 4405 of the banking code of 1999, 1999 PA 276, MCL 487.14405, a fiduciary in the fiduciary's personal capacity shall not engage in a transaction with the estate that the fiduciary represents and shall not invest estate money in a company, corporation, or association with which the fiduciary is affiliated, other than as a bondholder or minority stockholder. A fiduciary in the fiduciary's personal capacity shall not personally derive a profit from the purchase, sale, or transfer of the estate's property. A fiduciary's deposit of money in a bank or trust company, in which the fiduciary is interested as an officer, director, or stockholder, does not constitute a violation of this section.

EPIC took effect on April 1, 2000, and applies to all proceedings pending on or commenced after that date. MCL 700.8101(2)(b). MCL 700.8101(2)(d) states that EPIC "does not impair an accrued right or an action taken before that date in a proceeding." EPIC does not define "accrued right." *In re Smith Estate*, 252 Mich App 120, 127; 651 NW2d 153 (2002).

However, "an 'accrued right' is a legal right to the exclusion of any other right or claim to it." *Id.* at 128-129. Moreover, "the word 'accrued' is closely analogous to 'vested.' " *Id.* at 127, quoting *In re Finlay Estate*, 430 Mich 590, 600, n 10; 424 NW2d 272 (1988). "A vested right is a present or future right to do or possess certain things not dependent upon a contingency." *Henry L Meyers Moving & Storage v Michigan Life & Health Ins Guaranty Ass'n*, 222 Mich App 675, 691; 566 NW2d 632 (1997), quoting *Wylie v Grand Rapids City Comm*, 293 Mich 571, 586-587; 292 NW 668 (1940). The action complained of, the transfer of the homestead property, took place on December 16, 2011. Defendant thus did not have accrued rights to this property before EPIC became effective.

Relying on *In re Byrne Estate*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2014 (Docket No. 307641), defendants nevertheless argue that EPIC, specifically MCL 700.1214, does not apply in this case. In that case, the defendant held a power of attorney executed by the decedent since at least the 1990s. She was also a joint account holder on several accounts with decedent. After the effective date of EPIC, the decedent participated in several financial transactions that benefited the defendant and on the day of and after the decedent's death, the defendant withdrew money from and/or closed their joint accounts. Plaintiffs asserted that the defendant was a fiduciary by virtue of the power of attorney and that this fiduciary status precluded her from self-dealing with the decedent's assets under MCL 700.1214. This Court found that MCL 700.1214 did not apply generally to all persons who delegate authority to another via a power of attorney and that in the case before it, at the time of the challenged transactions (which involved the joint accounts) the defendant was not a fiduciary.

In this case, on the other hand, Stephen was a fiduciary to the decedent at the time of the transfer by virtue of the grant of the durable power of attorney. He admitted that he was acting in a fiduciary capacity and owed his principals a fiduciary duty at the time he was acting as their agent under the powers of attorney. In *In re Susser Estate*, 254 Mich App 232, 235; 657 NW2d 147 (2002), this Court noted that an attorney-in-fact acting under the authority of a general power of attorney is in a fiduciary relationship with the principal by stating as follows:

> One inference arising out of an agency relationship is that the agent is to act only for the principal's benefit. See 1 Restatement Agency, 2d, § 39, p 130.
>
> The agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking. Among the agent's fiduciary duties to the principal is . . . the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them[.]
>
> These principles of agency are generally considered applicable to an attorney in fact acting pursuant to powers of attorney. See, generally, 3 Am Jur 2d, Agency, §§ 21-32, pp 445-453.

Alton executed the durable power of attorney by which he appointed Stephen as his "true and lawful attorney-in-fact" and Gwendolyn did the same. Accordingly, Stephen's fiduciary duty to Alton and Gwendolyn arose as a matter of law from the grant of the powers of attorney. "As with the grant of any other agency rights and responsibilities, a fiduciary obligation was established without need for the document itself to include language expressly imposing a fiduciary duty." *In re Susser*, 254 Mich App at 236. Thus, the trial court correctly applied EPIC in this case because Stephen was in a fiduciary relationship with Alton and Gwendolyn, EPIC prohibited self dealing by a fiduciary, EPIC was in effect on the date of the transfer of the property, the actual transfer of property did not occur until after Alton passed away (i.e., involved the affairs of a decedent under MCL 700.1301), and defendants did not have any accrued rights at the time of the transfer.

Notably, MCL 700.1214 prohibits self-dealing by fiduciaries except in certain limited circumstances including when the governing instrument expressly authorizes such a transaction or when the court authorizes it. Defendants argue that the durable powers of attorney expressly authorized the subject transfer because it granted Stephen the ability to dispose of real property in a manner he deemed proper. The durable powers of attorney enabled Stephen

> To . . . sell and convey, and in every manner deal with real or personal property, tangible or intangible, or interests therein, on such terms and conditions as [Stephen] shall deem proper[.]

The durable powers of attorney also contained the following language:

> 4. **<u>Restrictions on Agent's Powers.</u>** Regardless of the above statement, [Stephen] (1) cannot execute a Will, a Codicil, or any Will substitute on my behalf . . . (3) cannot make gifts on my behalf, except to continue such gifting program, if any, that I may have established during my lifetime with regard to my issue; and (4) may not exercise any powers that would cause assets of mine to be considered taxable to my agent or to my agent's estate for purposes of any income, estate, or inheritance tax[.]

Although the plain language of the powers of attorney allows Stephen to convey the homestead property on such terms and conditions as he deems proper, it prohibits him from executing a will or any will substitute and making gifts. Stephen exceeded this authority when he used the power to transfer the homestead property to himself because such use of the power of attorney amounted to a will substitute. The record shows that Alton and Gwendolyn were fully competent when they executed the powers of attorney. The record also demonstrates that Alton and Gwendolyn had been consistent in their wills that Stephen was to receive 25 percent and that plaintiff and her children were to receive 75 percent of their estate. Defendants failed to offer any evidence to explain why it was necessary for Stephen to use a power of attorney to fulfill the transfer of the homestead property. As the probate court noted, if Alton and Gwendolyn's true intent was to transfer the property to defendants, they could have executed a new will, a codicil, or a deed. Stephen's execution of the warranty deed constituted a will substitute and as a result, it violated the durable powers of attorney.

Alternatively, the subject transfer constituted a gift prohibited by the durable powers of attorney. The warranty deed provides that the consideration was less than $100; the homestead property was given to defendants rather than sold for value. Again, had Alton and Gwendolyn intended to give the property to defendants, they could have fulfilled such intent without the powers of attorney by executing a new will, a codicil, or a deed. Stephen made the gift on Alton and Gwendolyn's behalf in violation of the durable powers of attorney.

Finally, the probate court did not err in invalidating the warranty deed as to Ewa Sell. The durable powers of attorney, in pertinent part, provides as follows:

> 3. **Reliance**. Third parties may rely upon the representation of my agent as to all matters relating to any power granted to my agent, and no person who may act in reliance upon the representation of my agent or authority granted to my agent shall incur any liability to me or my estate as a result of permitting my agent to exercise my power.

Defendants assert that Ewa was a third party, that Alton and Gwendolyn agreed to a contract whereby Ewa would provide services and financial support in exchange for the property transfer, and that she did provide substantial services, and that the warranty deed should not be invalidated as to Ewa because she was a third party to the transfer.

While defendant Ewa benefitted from the execution of the deed, she was not an innocent third party. Moreover, regardless of whether she could be construed as a third party with respect to the transfer pursuant to a power of attorney granted to defendant Stephen only, because the probate court correctly found that the warranty deed was null and void in violation of EPIC, apart from whatever protections might have been afforded to a third party by the powers of attorney themselves, it is void as to all grantees.

Defendants further contend that the grant of partial summary disposition was premature because discovery was not complete. While summary disposition pursuant to MCR 2.116(C)(10) is generally premature if granted before discovery on a disputed issue is complete, *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009), a motion under MCR 2.116(C)(10) may be made at any time. MCR 2.116(B)(2), (D)(4). Defendants present no argument regarding what factual support for their claims might be uncovered by further discovery. See *Liparoto Constr Co v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). Summary disposition was not premature in this case because "there is no fair likelihood that further discovery will yield support for [defendants'] position." *Id.*

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

-5-