*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF GEORGE BROHL.

---

WALTER SAKOWSKI, Personal Representative of
the ESTATE OF GEORGE BROHL,

      Plaintiff-Appellee,

v

KEITH WOODCOCK, SANDRA TANNER,
KAMERON WOODCOCK, and ROSEMARY
WOODCOCK,

      Defendants-Appellants.

UNPUBLISHED
November 30, 2023

No. 362333
Wayne Probate Court
LC No. 2021-864181-CZ

---

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendants, Keith Woodcock (Keith), Sandra Tanner, Kameron Woodcock, and Rosemary
Woodcock (Rosemary), appeal as of right the trial court's order granting summary disposition in
favor of plaintiff, Walter Sakowski, as the personal representative of the estate of George Brohl.
In addition to challenging the merits of the court's summary-disposition ruling, defendants also
challenge the court's April 20, 2022 ruling denying defendants' motion to disqualify plaintiff's
counsel. We affirm the denial of defendant's motion to disqualify plaintiff's counsel, affirm the
grant of summary disposition related to liability, reverse the grant of summary disposition related
to the amount of damages, and remand for further proceedings.

## I. BASIC FACTS

This case arises out of financial transactions executed by Keith in his role as attorney-in-
fact for George Brohl. Brohl grew up in the Detroit area but later lived in the Chicago area. In
2017, Ellen Thon, who apparently is the stepdaughter of Brohl's deceased sister, helped move
Brohl back to the Detroit area, specifically a senior living complex in Riverview, Michigan, called

-1-

the Bellaire. At some point, Thon and Brohl created joint savings and checking accounts at Bank of America.

Keith testified that on many occasions when he visited Brohl at the Bellaire, Brohl expressed concerns about how Thon was handling his financial matters. Brohl reportedly kept asking for information and documents from Thon, but she was not complying. In February 2018, Brohl fell and had to be taken to the hospital for his injuries. While there, Keith and Keith's wife, Laurie Boyd, visited him. During this visit, Brohl expressed more concerns about Thon overseeing his financial matters. Brohl was discharged from the hospital sometime later and returned to the Bellaire.

Shortly after this visit at the hospital, Keith and Thon met with attorney Peter Staver. As a result of that discussion, Staver drafted a durable-power-of-attorney form. On February 26, 2018, Keith, Thon, Staver, and others met at Brohl's room at the Bellaire to execute the power-of-attorney form, but Brohl was asleep and unable to be awakened. Following that attempted meeting, Keith reviewed the proposed power-of-attorney form with Brohl, and Boyd made changes to the form pursuant to Brohl's feedback. On April 22, 2018, with a notary present, Brohl signed the revised durable-power-of-attorney form, giving Keith the authority to act as Brohl's attorney-in-fact.

Thereafter, Keith created new savings and checking accounts at the Bank of America, with Brohl as the named accountholder and Keith listed as the power of attorney. On May 24, 2018, Keith transferred $233,000 from the Brohl/Thon accounts to the Brohl/Keith accounts.[1] A day later, Keith withdrew $204,412.50 from the Brohl/Keith savings account and deposited $204,000 of that amount into his personal account at PNC Bank. Keith testified that all of these transfers were done pursuant to Brohl's express directions. Keith stated that it was Brohl's intention for the $204,000 to go directly to Keith for him to use as he pleased. Keith also gave gifts of $5,000 to his sister, $10,000 to his mother, and $5,000 to himself. For these gifts too, Keith stated that they were done pursuant to Brohl's express requests. Brohl died on May 30, 2018. On June 1, 2018, $387.50 was transferred from the Brohl/Keith account back into the Brohl/Thon account.

In March 2019, Thon, through counsel Lawrence Kohl, filed suit against Keith, Keith's son, Keith's mother, and Keith's sister (the same defendants named in this case). An amended complaint asserted claims for violation of the fraudulent conveyance act, MCL 566.221, and violation of MCL 600.2919a. That case was ultimately settled and closed, with defendants agreeing to pay Thon $49,000.

In June 2019, Thon, again represented by Kohl, filed a petition for probate and appointment of personal representative for Brohl's estate. Thon listed her relationship to the decedent as "creditor" and nominated herself as personal representative of the estate. The probate court, however, ultimately appointed plaintiff Sakowski as personal representative.

---

[1] $225,000 was transferred from the Brohl/Thon savings account to the Brohl/Keith savings account, and $8,000 was transferred from the Brohl/Thon checking account to the Brohl/Keith checking account.

On April 1, 2021, Sakowski, as personal representative of Brohl's estate, filed the complaint giving rise to the instant case. The complaint listed five counts: self-dealing (Count I), breach of duty of good faith and loyalty (Count II), violation of MCL 700.5501 (Count III), violation of MCL 600.2919a (Count IV), and violation of the fraudulent conveyance act, MCL 566.221 (Count V). As pertinent to this appeal, attorney Kohl represented Sakowski in this action.

Defendants filed a motion to disqualify Kohl from representing the estate in the instant case because of a purported conflict of interest. Defendants argued that Kohl had a conflict because he was representing both the estate and Thon, who had a claim against the estate, and that the estate was thereby prejudiced. The trial court denied the motion, simply stating, "I don't find that [the motion to disqualify] has any merit, such that Mr. Kohl should be disqualified on this case so I'm going to deny that motion."

The parties also filed competing motions for summary disposition related to plaintiff's claims. Plaintiff argued that pursuant to MCL 700.5501 as well as Keith's signed acknowledgment of duties, an attorney-in-fact is precluded from making a gift of any part of the principal's assets unless provided for in the power-of-attorney form. According to plaintiff, because nothing in the power-of-attorney form authorized the transfer of the $233,000 to Keith's personal account, nor authorized any gifts to Keith, his mother, his sister, or his son, summary disposition was warranted. Plaintiff also argued that Keith engaged in self-dealing by taking possession of the monies, in violation of MCL 700.1214. Lastly, plaintiff contended that the scenario was a classic case of conversion because Keith wrongfully took Brohl's funds for his own use.

Defendants argued that they were entitled to summary disposition on the claim alleging a violation of MCL 700.1214 because Keith was acting as an agent and not a fiduciary when he transferred the funds. Defendant also argued that any claim brought under MCL 700.5501 failed as a matter of law because Brohl was not an incapacitated individual. Defendants alternatively argued that Keith acted within his authority and did not violate any good-faith obligation or any provision of MCL 700.5501 because the power-of-attorney document allowed for gifts to be given under Keith's absolute discretion and Brohl expressly instructed Keith to make the various transfers and gifts.

The trial court granted plaintiff's motion, denied defendants' motion, and ordered Keith to pay plaintiff $233,000. In an accompanying opinion, the court explained that Keith's acts of gifting violated MCL 700.5501 because the gifting that occurred did not fall under any of the allowances of that statute. The court also opined that Keith's transfer of $225,000 into his personal PNC account and retention of that money was a breach of fiduciary duty and violation of MCL 700.1214, which precludes a fiduciary from personally deriving a profit from the estate's property. The court rejected defendants' arguments that Keith was not a fiduciary, explaining that although MCL 700.1104(e) does not list an "agent" as a fiduciary, Michigan's common law establishes that an agent is one. The trial court also rejected defendants' argument that because Brohl was not incapacitated, Michigan's Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, does not apply. The court noted that MCL 700.1301(a) expressly states that EPIC applies to the "affairs and estate of a decedent."

The trial court also rejected defendants' argument that Brohl's oral instructions to Keith authorized the gifts and transfers. The court first ruled that Brohl's statements could not be

considered because they were inadmissible hearsay. But the court also noted that even if the statements were admissible, the statements would not explain the transfer of the funds into Keith's personal PNC account. The court reasoned that, assuming Brohl did direct Keith to place the funds out of Thon's reach, transferring them to the Brohl/Keith account would have been sufficient, making the transfer to the PNC account without authorization.

This appeal followed.

## II. MOTION TO DISQUALIFY COUNSEL

On appeal, defendants argue that the trial court erred by denying their motion to disqualify Kohl as counsel for plaintiff. We disagree.

In their motion to disqualify plaintiff's attorney (Kohl), defendants relied on MRPC 1.7(a) and (b), which provide:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. . . .

In denying defendants' motion, the trial court did not make any factual findings, but the underlying facts are not in dispute. Kohl had represented Thon in the prior action that Thon brought against defendants. That action related to the same funds now at issue in this case, and the action was dismissed after Thon received $49,000 in a settlement. Now, Kohl is representing the personal representative of Brohl's estate in the current case against the same defendants. Kohl also represented Thon when she filed the petition to open Brohl's probate estate.

We agree with the trial court that Kohl representing the personal representative of Brohl's estate is not in direct conflict with the interests of his other client, Thon.[2] The personal

---

[2] On appeal, plaintiff asserts that defendants lack standing to challenge Kohl's representation of the estate. The comments to MRPC 1.7, however, explicitly state, "Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question."

-4-

representative is attempting to recover the $233,000 in funds that Keith removed from Brohl's joint accounts, and Thon is not directly affected by those claims. Of course, if the estate were successful in recouping funds from defendants and Thon subsequently brought a claim against the estate, then there would be a conflict between the estate's interests and Thon's interests. This in turn would preclude Kohl from representing either side without the consent of both parties. See MRPC 1.7(a). But that possibility has not occurred, so no conflict of interest exists.

Defendants also argue that the estate cannot receive "unbiased advice from Kohl" as evidenced by the estate's decision to pursue recovery of funds from defendants but not Kohl's client, Thon. In our opinion, nothing about the estate's decision to pursue recovery from defendants but not Thon suggests a conflict of interest. The estate in the present lawsuit is attempting to recover all of the funds it allegedly lost, which it can theoretically do by pursuing its current claims. Consequently, the estate is not prejudiced by the decision to not include Thon in the current litigation.[3]

## III. ADMISSIBILITY OF EVIDENCE

Defendants next argue that the trial court erred when it declined to consider Brohl's statements to Keith on the basis that they were inadmissible hearsay. We agree. This Court reviews a trial court's decision regarding the admissibility of evidence for an abuse of discretion, but any preliminary question of law affecting admissibility is reviewed de novo. *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 275-276; 730 NW2d 523 (2006). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

As background, shortly after defendants filed their answer to the complaint, plaintiff filed a motion to exclude evidence of Brohl's statements to Keith as inadmissible hearsay. In response, defendants argued that the statements were admissible under the state-of-mind exception, MRE 803(3), to the general prohibition of hearsay, MRE 802. Plaintiff later withdrew the motion. Despite this, when the trial court ruled on the parties' competing motions for summary disposition, it sua sponte determined that Brohl's statements to Keith were inadmissible hearsay, which precluded their consideration under MCR 2.116(G)(6).

The trial court abused its discretion. MCR 2.116(G)(6) provides that evidence submitted in relation to a motion for summary disposition brought under MCR 2.116(C)(10) "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." It is well established that hearsay is not admissible unless it falls within an exception provided in the court rules. MRE 801; MRE 802. While the trial court correctly concluded that the contested statements were hearsay, it did not address any exceptions, even though defendants argued that the statements fell under the hearsay exception in MRE 803(3). That subrule provides that the following is "not excluded by the hearsay rule":

---

[3] If, as defendants contend, their concern is that Thon allegedly received a portion of the funds now disputed in this case, then a more appropriate remedy may have been to seek the joinder of Thon as a defendant. See MCR 2.205; MCR 2.206.

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. [MRE 803(3).]

The statements at issue are Brohl's purported statements to Keith regarding Brohl's then-existing intentions and desires pertaining to the distribution of his money, namely, to transfer the funds and make certain gifts. This type of evidence plainly falls under the exception of MRE 803(3). See Graham, Winning Evidence Arguments § 801:5 ("Thus testimony by an agent as to a statement by the principal granting him authority to act as agent is not hearsay."). Therefore, the statements are admissible and are properly considered when deciding a motion for summary disposition brought under MCR 2.116(C)(10). However, as further discussed below, any error is harmless and does not require reversal.

## IV. SUMMARY DISPOSITION—LIABILITY

We now turn to whether the trial court properly granted plaintiff's motion for summary disposition. This Court reviews de novo both a trial court's decision to grant summary disposition and questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). The trial court granted summary disposition in favor of plaintiff under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The motion should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Kisiel v Holz*, 272 Mich App 168, 170; 725 NW2d 67 (2006).

Here, the trial court ruled that there was no question of fact that Keith violated MCL 700.5501, breached his fiduciary duty to Brohl, and violated MCL 700.1214.

### A. MCL 700.5501

Defendants argue that the trial court erred because MCL 700.5501 does not apply to this case and, under the common law, the disputed transactions were permissible. MCL 700.5501 through MCL 700.5505 are part of EPIC and set forth provisions that control powers of attorney. MCL 700.5501 pertains to certain requirements of a durable power of attorney. In plaintiff's complaint, plaintiff alleged that Keith violated MCL 700.5501(3)(d), and plaintiff moved for summary disposition on this claim. MCL 700.5501(3)(d) provides:

(3) An attorney-in-fact designated and acting under a durable power of attorney has the authority, rights, responsibilities, and limitations as provided by law with respect to a durable power of attorney, including but not limited to, all of the following:

(d) The attorney-in-fact shall not make a gift of all or any part of the principal's assets, unless provided for in the durable power of attorney or by judicial order.

In the trial court, defendants argued that MCL 700.5501(3)(d) does not apply in this case. The trial court disagreed, reasoning that this case concerns the affairs and estate of a decedent, and therefore EPIC applies pursuant to MCL 700.1301(a).

While we disagree with the trial court's reasoning, we conclude that the trial court reached the correct result. MCL 700.1301 states, "Except as otherwise provided in this act, this act applies to all of the following," then lists a series of circumstances in which the act applies. Based on this language, it can be reasonably concluded that MCL 700.1301 is not the exclusive provision for determining whether a provision of EPIC applies. By the plain terms of MCL 700.5501, Subsection (3)(d) applies to a durable power of attorney; Subsection (1) defines durable power of attorney and explains how a durable power of attorney is created; and Subsection (7) identifies exceptions for when the provisions governing a durable power of attorney in Subsections (2) through (6) apply. The durable power of attorney at issue in this case was created pursuant to MCL 700.5501(1), and defendants do not contend that it meets any of the exceptions in MCL 700.5501(7). It is thus apparent that MCL 700.5501(3)(d) applies.

Defendants do not contest that, if MCL 700.5501(3)(d) applies, then the trial court correctly found that Keith violated it.[4] Accordingly, the trial court's ruling that Keith violated MCL 700.5501(3)(d) is affirmed.

### B. MCL 700.1214 AND FIDUCIARY DUTY

Defendants next argue that the trial court erred when it determined that MCL 700.1214 from the EPIC applied. MCL 700.1214 states:

Unless the governing instrument expressly authorizes such a transaction or investment, . . . a fiduciary in the fiduciary's personal capacity shall not engage in a transaction with the estate that the fiduciary represents and shall not invest estate money in a company, corporation, or association with which the fiduciary is affiliated, other than as a bondholder or minority stockholder. A fiduciary in the fiduciary's personal capacity shall not personally derive a profit from the purchase,

---

[4] Defendants argue instead that EPIC does not apply and Keith's actions were governed by the common law, specifically the common-law rule permitting an agent to "engage in self dealing if the principal consents and has knowledge of the details of the transaction . . . ." *In re Estate of Cummin*, 474 Mich 1117, 1117; 712 NW2d 447 (2006). *Cummin*, however, was decided before MCL 700.5501(2) through (7) were added to MCL 700.5501. See 2012 PA 141. While we acknowledge that there may be a colorable argument that MCL 700.5501(3)(d) did not abrogate the common-law rule identified by defendants as applied to attorneys-in-fact acting through a durable power of attorney, we decline to address that issue because it was not raised by the parties.

sale, or transfer of the estate's property. A fiduciary's deposit of money in a bank or trust company, in which the fiduciary is interested as an officer, director, or stockholder, does not constitute a violation of this section.

Defendants argue that this statute did not apply to Keith because it only applies to statutorily defined fiduciaries, and an attorney-in-fact is not one of them. We disagree. EPIC defines a "fiduciary" as including "*but is not limited to*, a personal representative, funeral representative, guardian, conservator, trustee, plenary guardian, partial guardian, and successor fiduciary." MCL 700.1104(e) (emphasis added). Based on this language, it is plain that the Legislature did not intend for its definition of "fiduciary" to be all-encompassing or exclusive. On its face, the statutory definition is not a mutually-exclusive list. Because it is well established under the common law that a fiduciary relationship arises as a matter of law from the grant of power of attorney, see *In re Estate of Susser*, 254 Mich App 232, 234-235; 657 NW2d 147 (2002), it was appropriate for the trial court to consider Keith a fiduciary under EPIC as a result of him being Brohl's attorney-in-fact.

Defendants alternatively argue that MCL 700.1214 should not apply to the facts of this case because Brohl was "alive and competent" at the time of the disputed transactions. This fact is not dispositive, however. MCL 700.1104(b) defines "estate" for purposes of EPIC as including "the property of the decedent, trust, or *other person whose affairs are subject to this act* as the property is originally constituted and as it exists throughout administration." (Emphasis added.) For the reasons explained in Part IV.A of this opinion, we conclude that MCL 700.5501 applies to the durable power of attorney at issue in this case. It follows that, even though Brohl was alive and competent at the time of the disputed transactions, Brohl's affairs were subject to EPIC. Consequently, Brohl's funds that Keith transferred were part of Brohl's "estate" within the meaning of MCL 700.1104(b), and because Keith was a fiduciary of this estate for the reasons previously explained, MCL 700.1214 applied.

## V. SUMMARY DISPOSITION—DAMAGES

Defendants next argue that, even assuming the trial court appropriately found that plaintiff was entitled to judgment as a matter of law, the court erred by awarding $233,000 in damages on summary disposition because there are questions of fact regarding the proper amount of damages. We agree.

When granting plaintiff's motion for summary disposition, the trial court awarded plaintiff damages of $233,000, which corresponds to the amount of funds that Keith withdrew from the Brohl/Thon joint accounts. Thus, the court implicitly determined that the estate was damaged by those withdrawals.

Even though those funds were withdrawn from the joint accounts held by Brohl and Thon, it is not clear if the estate truly was damaged to the extent of $233,000. The only way for that to be true is if Keith never used *any* of the withdrawn funds for the benefit of Brohl or his estate. Although Keith withdrew that amount from the joint Brohl/Thon accounts, only $204,412.50 was ultimately transferred to Keith's personal account. Thus, the $28,587.50 left behind was still in Brohl's name. But contrary to defendants' position, not all of those remaining funds were left for Brohl or used for Brohl or his estate. For instance, bank records show that there were a total of

-8-

$20,000 in withdrawals, consisting of a $10,000 check to Rosemary, a $5,000 check to Keith, and an unspecified $5,000 withdrawal. While we have determined that the distributions to Rosemary and Keith were not legal, when viewing the evidence in a light most favorable to defendants, it is not clear what the generic $5,000 withdrawal was used for. While it could be inferred that it was used as the $5,000 gift to Keith's sister, Tanner, the uncertainty creates a question of fact. Viewed in a light most favorable to defendants, that particular gift could have been given from the Keith's PNC account.[5] That same bank record shows that $387.50 was transferred from the Brohl/Keith account back to the Brohl/Thon account. Notably, there are no bank records to show what transactions, if any, occurred with the Brohl/Keith checking account that had $8,000 deposited into it. Thus, because they remained in Brohl's name and there is no evidence of anything happening to those funds, we cannot conclude that there is no genuine issue of fact regarding plaintiff's entitlement to judgment as a matter of law with regard to those $8,000 funds.

In sum, although Keith transferred a total of $233,000 from the Brohl/Thon accounts to the Brohl/Keith accounts, at a minimum, $387.50 was transferred back to the Brohl/Thon account. Further, there was no evidence to show what happened with the $8,000 that was transferred to the Brohl/Keith checking account. And Keith testified that some of the funds he withdrew were used for Brohl's and the estate's benefit, such as paying off debts for Brohl's living expenses and paying Brohl's funeral expenses. Thus, there are questions of fact regarding the amount of plaintiff's damages.[6] Accordingly, we reverse the portion of the trial court's order awarding plaintiff damages of $233,000 on summary disposition and remand for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[5] Indeed, Keith testified that the $5,000 came from his PNC account. Regardless, it is not clear what happened with the generic $5,000 withdrawal from the Brohl/Keith account. It conceivably could have been deposited into the PNC account before being given to Tanner.

[6] With regard to defendants' argument that plaintiff cannot recover the $49,000 they gave Thon in settlement of the prior lawsuit she filed against them or the attorney fees they paid while defending the suit, we note that the prior case was between defendants and Thon, and the estate was not a party to that action, so it is not evident how defendants paying Thon or defendants defending against the suit should be attributed to benefiting the estate. In any event, because the issue of whether plaintiff can recover from defendants the $49,000 that they paid Thon in settlement of her first suit is a factual issue that needs to be fleshed out on remand, we express no opinion on the issue.