*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Conservatorship OF NINA JEAN MURRAY.

---

PRESTON MURRAY, Personal Representative of
the ESTATE OF NINA JEAN MURRAY,

        Petitioner-Appellee,

v

MARK A. MURRAY,

        Respondent-Appellant.

FOR PUBLICATION
March 4, 2021
9:00 a.m.

No. 349068
Livingston Probate Court
LC No. 2014-015003-CA

---

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

REDFORD, J.

Respondent, Mark A. Murray, appeals by right the probate court's order requiring him to pay $51,348.86 to the Estate of Nina Jean Murray upon finding that he breached his fiduciary duties as conservator of his mother's estate. Because we conclude the probate court correctly applied the law to the facts of the case, we affirm.

## I. BACKGROUND

During January 2014, a doctor diagnosed respondent's mother, Nina Jean Murray, with dementia. She had been in decline since 2012 and became debilitated to the point that respondent petitioned to be appointed her conservator. At a hearing held on September 3, 2014, the probate court found that clear and convincing evidence established that Nina lacked the capacity to manage her property and business affairs because of her dementia, and that she had property that would be wasted or dissipated unless properly managed. The probate court granted respondent's petition, created a conservatorship and appointed respondent as the conservator of all assets of Nina's estate. The probate court ordered respondent to attend a conservatorship training program provided by the court. With its order the probate court gave respondent a standard notice that informed respondent of his legal duties to prepare and submit both an inventory of Nina's estate's assets and an annual accounting.

-1-

On April 1, 2015, Preston Murray, Nina's son and respondent's brother, petitioned to modify the conservatorship on the grounds that respondent failed to file an accurate inventory of the estate's assets, failed to disclose assets, engaged in self-dealing, and otherwise failed to properly manage the estate's assets. On August 11, 2015, based upon the parties' agreement, the probate court granted the petition, permitted respondent to resign as conservator, and appointed Ella McClatchey as successor conservator of Nina's estate. The probate court ordered respondent to file a final accounting by September 4, 2015.

On August 26, 2016, the probate court suspended respondent's powers as fiduciary and found that respondent failed to file a final accounting as ordered. The probate court appointed a special fiduciary, attorney William Mollison, and ordered him to assist respondent with preparing and filing a final accounting so that McClatchey could file an inventory. Nina died four months later on December 23, 2016.

Respondent failed to provide Mollison necessary documentation and information respecting Nina's estate which prompted Mollison to petition the probate court to order respondent to provide the necessary financial documents. The probate court ordered respondent on July 12, 2017, to provide Mollison the requested documents and information within 30 days. Respondent failed to do so which prompted Mollison to move for respondent to show cause why he failed to comply with the probate court's order. Mollison ultimately filed an amended inventory and a first and final accounting of fiduciary for September 3, 2014 through August 11, 2015, the period of respondent's service as conservator of Nina's estate. Preston, as personal representative of Nina's estate, filed objections to the accounting, requested information regarding disbursements of the estate's funds, and sought reimbursement of money to the estate. At the December 13, 2017 hearing, Mollison advised the probate court that an $1,800 discrepancy existed and that he still did not have all necessary bank account information. Mollison expressed concern that respondent became a joint account owner of Nina's bank accounts on April 10, 2014, before he became conservator, but Mollison could not clarify the ownership of her accounts because of the lack of bank account information. The probate court ordered respondent to transfer all estate assets in his possession as former conservator to Preston, the personal representative of Nina's estate, and discharged Mollison.

On December 21, 2017, Preston petitioned to surcharge respondent for funds allegedly missing from Nina's estate. The probate court held an evidentiary hearing on the objections to the accounting and the petition to surcharge. The probate court found that Nina lacked capacity as early as 2012. The probate court found that respondent breached his duties as conservator of Nina's estate and failed to file an accurate inventory and accounting. The court also found that respondent failed to keep records, failed to segregate assets, failed to provide credible accounting or records to support being personally reimbursed from estate assets, and failed to adhere to the standard of care required of a fiduciary. The probate court determined a total surcharge of $51,348.86 and ordered respondent to pay the following: (1) $6,540.90 for the special fiduciary fee necessitated by respondent's failure to file an inventory and accounting; (2) $1,800 for the discrepancy in the final accounting; (3) $37,099.58 for checks written, some of which he failed to give account and others related to misappropriated funds; (4) $3,400 for a payment made to Dawn Murray, respondent's wife; and (5) $2,508.38 for funds respondent misappropriated from the estate after Nina's death. Respondent moved for reconsideration but the probate court denied the motion. Respondent now appeals.

-2-

## II. STANDARD OF REVIEW

We review de novo issues of statutory interpretation which are questions of law. *In re Baldwin Trust*, 274 Mich App 387, 396; 733 NW2d 419 (2007). We review for clear error a probate court's factual findings in cases where the court conducted proceedings without a jury. *Id*. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017) (quotation marks and citation omitted). We "defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *Id*. (quotation marks and citation omitted). We review for an abuse of discretion a probate court's decision to remove a trustee and also decisions to surcharge a trustee. *In re Baldwin Trust*, 274 Mich App at 397. A probate court abuses its discretion where the court's rulings fall outside the range of reasonable and principled outcomes. *Id*.

Michigan generally follows a raise or waive rule of appellate review. *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). Although our Supreme Court has held that this Court must review unpreserved errors in criminal cases for plain error affecting the defendant's substantial rights, see *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), it has not established a similar rule for civil cases. *Walters*, 481 Mich at 387-388.

In *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-193; 920 NW2d 148 (2018) (quotation marks, alteration, and citations omitted), this Court explained:

> Although this Court need not review issues raised for the first time on appeal, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. However, while an appellate court has the inherent power to review an unpreserved claim of error, our Supreme Court has emphasized the fundamental principles that such power of review is to be exercised quite sparingly and that the inherent power to review unpreserved issues is to be exercised only under what appear to be compelling circumstances to avoid a miscarriage of justice or to accord a criminal defendant a fair trial.
>
> * * *
>
> [T]he fundamentals of appellate-preservation law . . . require parties to first raise issues in the lower court to be addressed in that forum. Therefore, plaintiffs have waived appellate review of this issue. Plaintiffs may not remain silent in the trial court and then hope to obtain appellate relief on an issue that they did not call to the trial court's attention. A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute.

This Court has discretion to review unpreserved issues in civil cases if review would prevent manifest injustice, or is necessary for proper resolution of the case, or the issue involves a question of law and the facts necessary for determination have been presented. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). This Court has reviewed forfeited issues when declining to do so would result in a miscarriage of justice. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004). This Court, however, exercises its discretion sparingly and only where exceptional circumstances warrant review. *Booth v Univ of Mich Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993).

In this case, although we do not conclude that a miscarriage of justice would occur if we declined to consider waived issues, we exercise our discretion to nevertheless address the issue because the issue involves a question of law and the facts necessary for its determination have been presented. See *Smith*, 269 Mich App at 427.

## III. ANALYSIS

### A. WHAT IS THE CORRECT BURDEN OF PROOF REQUIRED TO SURCHARGE AN INDIVIDUAL FOR A BREACH OF FIDUCIARY DUTIES

Respondent argues that the probate court erred respecting every surcharge ordered by the court and contends that petitioner was required but failed to establish by clear and convincing evidence each surcharge. We disagree because the probate court properly applied the preponderance of the evidence standard, and neither clearly erred in its factual findings nor abused its discretion by deciding to surcharge respondent in the ordered amounts.

### 1. THE ESTATES AND PROTECTED INDIVIDUALS CODE, MCL 700.1101 *ET SEQ.* (EPIC)

This case is governed by the Estates and Protected Individuals Code, MCL 700.1101 *et seq.* (EPIC) enacted by the Legislature in 1998 and made effective April 1, 2000. The EPIC provides that, "Unless displaced by the particular provisions of this act, general principles of law and equity supplement this act's provisions." MCL 700.1203(1). Under the EPIC, a conservator is a fiduciary. MCL 700.1104(e). "Appointment of a conservator vests in the conservator title as trustee to all of the protected individual's property, or to the part of that property specified in the order, held at the time of or acquired after the order[.]" MCL 700.5419(1). A conservator must "act as a fiduciary and observe the standard of care applicable to a trustee." MCL 700.5416.

MCL 700.1212(1) defines a fiduciary relationship as follows:

A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary. A fiduciary shall observe the standard of care described in [MCL 700.]7803 and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity. With respect to investments, a fiduciary shall conform to the Michigan prudent investor rule.

MCL 700.7803 provides that the fiduciary "shall act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule."[1] Under MCL 700.5417(1) and (2), within 56 days after appointment, a conservator must prepare and file a complete inventory of the estate subject to the conservatorship with an oath or affirmation of the inventory's completeness and accuracy as far as information permits, and the conservator must keep suitable records of the administration of the estate and exhibit records at the request of an interested person. Further, under MCL 700.5418, a conservator shall account to the court for the administration of the conservatorship estate and provide a copy of the accounting to the protected individual and to interested persons. The resignation or removal of a conservator triggers the duty to account under MCL 700.5418(1) and does not end the person's liability for actions during service as a conservator.

Under MCL 700.1308, the probate court has authority to determine and remedy a conservator's breaches of fiduciary duties. The statute provides in relevant part:

> (1) A violation by a fiduciary of a duty the fiduciary owes to an heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary is a breach of duty. To remedy a breach of duty that has occurred or may occur, the court may do any of the following:

> (a) Compel the fiduciary to perform the fiduciary's duties.

> * * *

> (c) Compel the fiduciary to redress a breach of duty by paying money, restoring property, or other means.

> (d) Order a fiduciary to account.

> * * *

> (g) Remove the fiduciary as provided in this act.

---

[1] MCL 700.1501 et seq. prescribes the Michigan prudent-investor rule. MCL 700.1502 provides:

> (1) A fiduciary shall invest and manage assets held in a fiduciary capacity as a prudent investor would, taking into account the purposes, terms, distribution requirements expressed in the governing instrument, and other circumstances of the fiduciary estate. To satisfy this standard, the fiduciary must exercise reasonable care, skill, and caution.

> (2) The Michigan prudent investor rule is a default rule that may be expanded, restricted, eliminated, or otherwise altered by the provisions of the governing instrument. A fiduciary is not liable to a beneficiary to the extent that the fiduciary acted in reasonable reliance on the provisions of the governing instrument.

(h)  For a fiduciary otherwise entitled to compensation, reduce or deny compensation to the fiduciary.

(2)  In response to an interested person's petition or on its own motion, the court may at any time order a fiduciary of an estate under its jurisdiction to file an accounting.  After due hearing on the accounting, the court shall enter an order that agrees with the law and the facts of the case.

## 2.  MICHIGAN LAW REQUIRES APPLYING THE PREPONDERANCE OF THE EVIDENCE STANDARD BECAUSE EPIC DOES NOT SPECIFY THE STANDARD OF PROOF

EPIC does not provide the standard of proof required to find a breach of fiduciary duty or personal liability of a conservator.  See MCL 700.1308; MCL 700.5430(4).  Respondent argues that petitioner was required but failed to prove by clear and convincing evidence that respondent breached his fiduciary duties and misused estate funds.  Respondent contends that *In re Baldwin's Estate*, 311 Mich 288, 295, 304-305, 306, 310; 18 NW2d 827 (1945), established that lower courts must apply the clear and convincing standard of proof when determining whether to surcharge a conservator of an estate.  We disagree.  In that case, our Supreme Court reviewed, in painstaking detail, a number of individual alleged improprieties for which the executor in that estate matter was surcharged.  Our Supreme Court used the word "convincing" three times in its review of more than a dozen discrete surcharges.  *Id*. at 305, 310.  In context, our Supreme Court was merely commenting on whether it found the record to support a particular conclusion.  Even if these ambiguous references could be construed as setting forth any kind of standard, they at most implied a standard of review on appeal, not a quantum of proof to be satisfied in the trial court.[2]  Indeed, a clear error standard of review would be consistent with the traditional standard of review applied to trial courts' factual determinations.  *In re Baldwin Trust*, 274 Mich App at 396.  Nothing in *In re Baldwin's Estate* set forth a standard of proof, and because EPIC would not be enacted by the Legislature for another 50 years, *In re Baldwin's Estate* would not necessarily have governed the standard of proof in cases governed by the EPIC in any event.

Petitioner counters that, because MCL 700.1308 does not specify a standard of proof applicable for finding a breach of fiduciary duty, the burden of proof is the default standard, by a preponderance of the evidence.  We agree because this Court has held that "[w]hen a statute fails to state the standard that probate courts are to use to establish a particular fact, the default standard in civil cases—preponderance of the evidence—applies."  *In re Guardianship of Redd*, 321 Mich App 398, 409; 909 NW2d 289 (2017) (citation omitted); see also *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 522; 857 NW2d 529 (2014) ("[B]ecause the statute does not state the quantum of proof necessary to obtain confirmation of removal, the default standard in civil cases, the preponderance of the evidence, applies.").

---

[2] To the extent our Supreme Court explicitly discussed a standard of review, it only explained that trial courts have discretion whether to impose interest upon any particular surcharge.  *In re Baldwin's Estate*, 311 Mich at 310-312.

Accordingly, because the EPIC, and specifically MCL 700.1308, does not specify the applicable standard of proof for determining breach of fiduciary duty after which the probate court may impose a surcharge, we are bound by precedent that establishes that the preponderance of the evidence standard applies and we therefore hold, the standard of proof for determining breach of duty and the appropriateness of a surcharge is a preponderance of the evidence.

### 3. THE PROBATE COURT APPLIED THE CORRECT STANDARD OF PROOF AND REACHED THE CORRECT DECISION

Upon a finding that a conservator violated a fiduciary duty, the probate court can "[c]ompel the fiduciary to redress a breach of duty by paying money, restoring property, or other means." MCL 700.1308(1)(c). The probate court may also reduce or deny compensation to the fiduciary. MCL 700.1308(h). "A conservator is personally liable for an obligation arising from ownership or control of estate property or for torts committed in the course of estate administration only if personally at fault." MCL 700.5430(2). "A question of liability between the estate and the conservator personally may be determined in a proceeding for accounting, surcharge, indemnification, or other appropriate proceeding or action." MCL 700.5430(4).

Under MCL 700.5417(2) respondent had the fiduciary obligation to "keep suitable records of the administration and exhibit those records on the request of an interested person." MCL 700.5418(1) imposed the fiduciary duty upon respondent to file a complete and accurate accounting of the estate annually and upon resignation or removal, or as directed by the court. As a conservator, respondent had the fiduciary duty to discharge all of his duties with "care and prudence." MCL 700.1212(1). Further, respondent had the fiduciary obligation to act as a "prudent person in dealing with the property of another" and "exercise reasonable care, skill, and caution." MCL 700.7803; MCL 700.1502(1).

In this case, a preponderance of the evidence established that respondent breached his fiduciary obligations as a conservator under MCL 700.5417 and MCL 700.5418. During the period of his service as conservator of Nina's estate, respondent failed to prepare and file a complete and accurate inventory of estate assets. After he resigned his position as conservator, the probate court specifically ordered him to file a final accounting by September 4, 2015. Respondent failed and refused to obey the probate court's order. Because of respondent's disobedience, the probate court appointed Mollison as special fiduciary to render a final accounting for the period of respondent's service as conservator. The record reflects that respondent failed to cooperate with Mollison by never providing the necessary financial documentation and information to Mollison to enable a complete and accurate accounting. Although Mollison prepared an accounting, the record reflects that he did so without the requisite documentation and information because of respondent's misconduct in direct violation of the probate court's order and in further breach of his basic fiduciary duties as a conservator.

Respondent admitted that, despite completing a conservator training class that instructed him to do so, he failed to keep all of the receipts and records respecting Nina' estate. Respondent does not dispute that he failed to file an accounting within the time that the probate court ordered or that the court appointed Mollison as special fiduciary to assist him in filing a final accounting.

We conclude that the probate court correctly concluded by a preponderance of the evidence that respondent breached his fiduciary duties to the protected individual in a wide variety of ways.[3]

## B. THE RAMIFICATIONS OF RESPONDENT'S BREACH OF HIS FIDUCIARY DUTIES

### 1. APPORTIONMENT OF FUNDS EXPENDED BY APPOINTMENT OF MOLLISON
$6,540.90

Respondent's breach of his duties during his service as the estate's conservator and his post-resignation breach of his duties necessitated the appointment of Mollison which caused the estate to incur charges totaling $6,540.90. Mollison supported the charges by submitting detailed itemized billing records that set forth the work performed, the time committed to performance of that work, and that he charged at the court-approved discounted billing rate. The probate court did not err by finding that respondent breached his fiduciary duties. A preponderance of the evidence supported the probate court's decision. Because of respondent's breaches, the probate court properly surcharged respondent as authorized under MCL 700.1308(1)(c) for the charges incurred by Nina's estate for the services provided by the special fiduciary necessitated by respondent's breaches. We find no merit to respondent's protestations that Mollison should have attempted to fulfill his duties through other methods. The record reflects that Mollison appropriately carried out his duties as the special fiduciary charged with rectifying the mess created by respondent but respondent failed to cooperate necessitating court intervention and more work by Mollison. The probate court did not clearly err in making its findings which were supported by a preponderance of the evidence and it did not abuse its discretion by imposing the surcharge of $6,540.90 against respondent.

### 2. THE $1,800 SHORTFALL IN AN ACCOUNT

Respecting the $1,800 shortfall reported by Mollison, respondent argues for the first time on appeal that Mollison's testimony, inventory, and accounting were unreliable and do not support the surcharge of that amount. Because respondent failed to preserve this claim of error, we exercise our discretion to review the issue because the issue involves a question of law and the facts necessary for its determination have been presented. See *Smith*, 269 Mich App at 427.

As a fiduciary, respondent had the obligation to comply with MCL 700.1212(1) and follow the standards of the Michigan prudent-investor rule, which required him to exercise reasonable care, skill, and caution in managing the assets held in his fiduciary capacity. Respondent also had the duty to keep suitable records of his administration of Nina's estate. MCL 700.5417(2). As a

---

[3] We conclude that the probate court's decision in this regard, based on the preponderance of the evidence standard, was completely correct. We further note, however, even if the standard of proof was clear and convincing evidence as respondent argues, this degree of proof would also have easily been satisfied on the record before this Court. We also recognize that respondent contends that the probate court lost some of his exhibits; but because respondent has not provided any evidence or authority that the probate court was made responsible for the safekeeping of those exhibits, and we are not persuaded that respondent is entitled to relief in any event, we decline to address that contention.

result of the final account of Nina's estate for the period respondent served as conservator, Mollison found an $1,800 deficit in Nina's bank account ending in 2589, about which he testified at the evidentiary hearing. Respondent had no reasonable explanation for the bank account deficiency and offered only an excuse for which he lacked supporting documentation. We defer to the probate court's determinations of credibility. *In re Conservatorship of Brody*, 321 Mich App at 336. Respondent has failed to establish that the probate court committed error, plain or otherwise. The record reflects that respondent breached his fiduciary duties by failing to properly administer Nina's estate and failed to adequately maintain records and account for the assets of the estate during the time he served as conservator. The probate court did not err by relying on Mollison's testimony which established the $1,800 shortfall in Nina's bank account. Accordingly, the probate court did not abuse its discretion by ordering respondent to pay $1,800 as authorized under MCL 700.1308(1)(c).

### 3. $37,099.58 IN CHECKS FROM NINA'S ACCOUNT WITHOUT PROPER EXPLANATION

Respondent also argues that the probate court erred by imposing a surcharge totaling $37,099.58 for checks respondent issued from Nina's bank account without proper explanation or documentary support. We disagree.

The record reflects that the probate court heard testimony from Mollison, McClatchey, and respondent, and examined the evidence presented by the parties respecting respondent's use of Nina's bank accounts and in particular the account ending in 2589. The probate court found that respondent wrote a check in the amount of $3,400 to an unknown recipient and failed to account for the expenditure, lacked any records, and could not explain his actions. Respondent issued a check in the amount of $6,916.58 in May 2016, another in the amount of $3,283 in July 2016, and another check in the amount of $1,000 in August 2016. Respondent testified that he did not know for what he issued the July 22, 2016 check #2748 in the amount of $3,283. The record lacks evidence indicating a reason for respondent's issuance of that check. Similarly, respondent could not account for the August 5, 2016 check #2747, issued in the amount of $1,000. The probate court found that respondent failed to account for these checks, lacked suitable records of any transactions requiring such payments, and could not explain the bases for such expenditures during his sworn testimony at the evidentiary hearing. The probate court also found that respondent issued a check from Nina's account to himself in the amount of $22,500 which he cashed.

The probate court explained in its ruling that during respondent's testimony at the evidentiary hearing, respondent failed to explain why he paid himself the money and vacillated between claiming the bank accounts were jointly owned so that the money belonged to him, and claiming that he merely reimbursed himself for expenses he paid for Nina out of his own pocket. The probate court correctly rejected that testimony in its entirety because record evidence established that Nina lacked capacity as early as 2012 and constituted a vulnerable adult, the money in the subject account solely came from deposits from Nina's income sources, and respondent provided the court no accounting or records that supported respondent's right to reimbursement or justified respondent paying himself $22,500.

The record reflects that the probate court considered all of the evidence and analyzed it in great detail. The probate court permitted respondent to provide an explanation and present

evidence to support his position. Respondent, however, lacked the ability to account for the $37,099.58 for checks respondent issued from Nina's bank account, submitted no documentary evidence to support the expenditures, which further established his breaches of duties owed to Nina and her estate while a vulnerable adult.

Respondent argues that, because he was a joint account owner of Nina's Bank of America accounts, a presumption existed that he owned the accounts upon Nina's death under MCL 487.703. Under MCL 487.703, a presumption exists that title to funds held in a joint account with the right of survivorship is intended to vest in the surviving joint owner, which can be rebutted by a showing of fraud or undue influence.

> To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, is not sufficient. However, in some transactions the law presumes undue influence. The presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976), holding limited in part on other grounds by *In re Estate of Karmey*, 468 Mich 68, 74; 658 NW2d 796 (2003) (citation omitted).]

Once a presumption of undue influence is established, the opposing party must offer sufficient rebuttal evidence. *Kar*, 399 Mich at 542.

This Court has held that a fiduciary relationship exists when a person agrees to act as a principal's agent under a power of attorney. *In re Susser Estate*, 254 Mich App 232, 234-235; 657 NW2d 147 (2002). In *In re Susser Estate*, this Court concluded that a son owed his mother a fiduciary duty after she appointed him a durable power of attorney which bound him to act in her best interest. *Id*. This Court affirmed the jury's finding that the son wrongfully converted his mother's assets by using the durable power of attorney to gift himself a substantial portion of her financial portfolio. *Id*. at 233-234.

In this case, no evidence existed from which the probate court could conclude that respondent jointly held Nina's bank accounts with the right of survivorship. A preponderance of the evidence, however, established that Nina appointed respondent power of attorney respecting her accounts while she suffered from mental disability, but she did not grant him joint ownership. Respondent testified that his name was listed on Nina's Bank of America bank statement for the account ending in 2589 and that "POA" meant "power of attorney."

The record indicates that, a month after a doctor had diagnosed Nina with dementia, respondent's wife, Dawn, sent respondent an e-mail on February 18, 2014, informing him that she was going to add respondent's name to Nina's checking account. Respondent sent an April 8, 2014 e-mail stating that he took Nina to the Bank of America to notarize a new durable power of

attorney and that he planned to send the new power of attorney document to all of the accounts of which he was aware. Nina signed the power of attorney appointing respondent as her power of attorney on April 4, 2014. Respondent testified that Nina was able to make an informed decision to put him on her bank accounts in 2014 "[b]ecause that's what she said and that's what she wanted." However, in a March 2015 e-mail, respondent asserted that Nina was not of sound mind when she signed her will on January 30, 2013. Further, respondent never reported that he was joint owner of any of Nina's bank accounts despite the requirement to do so in the conservatorship inventory.

Although respondent asserts that Nina added his name to her bank account in November 2013, respondent's April 8, 2014 e-mail supports a finding that Nina did not do so until after the April 4, 2014 power of attorney documents were executed. From the record evidence, the probate court could reasonably conclude that Nina lacked the mental capacity to do so because she had been diagnosed with dementia in January 2014 and evidence indicated that she lacked capacity long before that. Further, if respondent added his name as joint owner of the accounts while acting under a power of attorney, he owed Nina fiduciary duties to only act in her best interest respecting her bank accounts and assets. *In re Susser Estate*, 254 Mich App at 234-235. Further, a presumption exists that respondent exercised undue influence. *Kar*, 399 Mich at 537, 542. Respondent failed to provide any rebuttal evidence to overcome that presumption and we conclude that the probate court likewise could conclude that respondent's claim of ownership interest in Nina's accounts lacked merit.

Respondent did not dispute that he wrote himself check #2749 for $22,500 on December 6, 2016. Respondent testified that the $22,500 payment reimbursed him and that he was entitled to the money because he became owner of the bank account after the death of Nina. Respondent, however, had no receipts to support his claim of entitlement to the reimbursement and he wrote the check before Nina's death. On appeal, respondent argues that, because he was not on notice that he would have to defend an undue influence claim, the surcharge of $22,500 should be vacated. Respondent, however, failed to preserve this issue. *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987). Regardless, the argument lacks merit and respondent is not entitled to appellate relief. The probate court found that respondent failed to account and could not explain the $22,500 expenses he contended he incurred for the care of Nina. The probate court did not find respondent's testimony credible and he failed to provide any credible accounting, records, or receipts to support his claim of entitlement to such reimbursement. Further, the record indicates that respondent had already paid himself $10,000 for Nina's care, which the probate court did not surcharge.

It is apparent from review of the entire record, that the probate court did not clearly err by finding that respondent had breached his fiduciary duties. A preponderance of the evidence established that he failed to keep and maintain appropriate records or account for the estate assets. Respondent failed to act as a prudent person in managing the estate's assets. Accordingly, because respondent breached his fiduciary duties both as conservator and under the durable power of attorney, the probate court could appropriately order respondent to repay the estate the amounts associated with his breaches. The probate court did not clearly err in making its findings which

were supported by at least a preponderance of the evidence[4] and it did not abuse its discretion by imposing the surcharge against respondent in the amount of $37,099.58 for checks respondent issued from Nina's bank account without documentary evidence of any sort to support the expenditures.

### 4. PAYMENT OF THOUSANDS OF DOLLARS TO RESPONDENT'S SPOUSE

Respondent also takes issue with the probate court's ruling respecting his payment of $3,400 from Nina's estate to his wife, Dawn Murray. Respondent testified that he issued check #2713 for $3,400 from Nina's account to pay Dawn on September 11, 2014, in exchange for conducting an estate sale. Respondent testified that he and Dawn worked for approximately six weeks to clean Nina's condo, hired some of his friends to help, and conducted the sale. Respondent testified that the $3,400 paid to Dawn included "expenses for dumpsters and cleaning supplies, garbage bags, tables, [and] calculators." The record indicates that respondent submitted an exhibit that indicated that the expenses of the estate sale were $1,332.54. Respondent testified that he issued check #2711 also in the amount of $3,400 on August 18, 2014, for payment to those who worked for the estate sale and related expenses. Respondent also testified that he paid the individuals in cash from the estate sale and he did not have a receipt or bill for the $3,400. MCL 700.5417(2) requires a conservator to "keep suitable records of the administration and exhibit those records on the request of an interested person." Respondent, however, kept no receipts for the estate liquidation nor reported any proceeds from the estate sale, kept no account of the assets purportedly sold, nor any receipts respecting expenses. Respondent provided no credible documentation to the probate court of any expenses related to the estate sale. Further, respondent failed during his testimony at the evidentiary hearing to explain how he arrived at the amount he paid his wife or others allegedly related to the estate sale. The probate court observed that respondent offered as justification for his lack of record keeping and failure to properly account for the expenditures that he saved money by not hiring a professional to handle the estate sale. The probate court appropriately rejected that because respondent failed to present any evidence to support his explanation. We defer to the probate court's determinations of respondent's lack of credibility in this regard. *In re Conservatorship of Brody*, 321 Mich App at 336. Respondent has failed to establish that the probate court erred in this regard.

### 5. EXPENDITURES TO OTHER LAW FIRM

Respondent argues that he issued the May 4, 2016 check for $6,916.58 to the law firm of Green and Green for the collection action against a person who lived with Nina and converted her assets. Petitioner requested $4,145.65 for a surcharge for respondent's pursuit of the lawsuit against that person who proved uncollectible. The record reflects that the probate court did not order respondent to repay the cost for that lawsuit. At the hearing, respondent testified that he did not know why he issued check #2745 for $6,916.58. The April 13, 2016 to May 11, 2016 bank statement for account ending in 2589 does not indicate to whom respondent issued the check. Respondent did provide a February 25, 2016 invoice from Green and Green for $6,916.58 prior to

---

[4] As indicated previously, it appears from the record the evidence would also have met the higher clear and convincing evidentiary burden posited by respondent.

his closing arguments, although the invoice lacked itemization and was not, strictly speaking, admitted into evidence.[5] It might be proper, under appropriate circumstances, to overlook the untimely submission of the invoice, because respondent proceeded *in propria persona* for some portions of this matter. See *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). Furthermore, parties are generally entitled to the benefit of evidence in their favor, even if that evidence conflicts with an opinion they have expressed. See *Ortega v Lenderink*, 382 Mich 218, 222-224; 169 NW2d 470 (1969). Fatally, however, respondent issued this May 2016 check after he stopped serving as the conservator of Nina's estate; therefore, any expense for the lawsuit owed by Nina's estate should have been directed to and paid by the successor conservator.

## 6. FUNDS MISAPPROPRIATED AFTER NINA'S DEATH

Respondent also argues that the probate court erred by surcharging him $2,508.38 for funds misappropriated after Nina's death on December 23, 2016. This argument also lacks merit.

The record reflects that the probate court analyzed the evidence and determined that respondent commingled Nina's bank account funds by depositing them into his own bank account. Further, respondent continued to use her funds for his personal expenses after her death. The account ending in 2589 had a balance after her death and deposits from Nina's income sources continued to be directly deposited into that account. Respondent did not contribute any funds to the account ending in 2589 but he testified that he believed he owned the account. Respondent admitted that he used the funds in that account after Nina's death. A preponderance of the evidence establishes that respondent breached his fiduciary duties because he failed to segregate Nina's assets as required under MCL 700.1212(1) and failed to maintain appropriate documentation and account for the expenses under MCL 700.5417(2) and 700.5418(1). Further, he breached his fiduciary duties under the power of attorney by taking Nina's funds for his personal use. The probate court concluded that respondent misappropriated $2,508.38 from the account after Nina's death. A preponderance of the evidence establishes that respondent breached his fiduciary duties by misappropriating the funds and the probate court did not clearly err in making its findings in this regard. Accordingly, the probate court did not abuse its discretion by surcharging respondent $2,508.38 for funds misappropriated by respondent after Nina's death.

## 7. DENIAL OF RECOUPMENT OF RESPONDENT BEYOND THE $10,000 RECEIVED BY RESPONDENT FOR NINA'S CARE

Respondent also argues that the probate court erred by denying him either recoupment or a setoff for the expenses he reasonably incurred related to providing Nina housing and caring for her for about one year. Petitioner counters that the probate court did not order a surcharge for the $10,000 respondent paid himself for Nina's housing and care while she lived with him, but correctly rejected respondent's claimed expenses for additional items like adult diapers and replacement of a soiled mattress and couch because respondent failed to provide credible

---

[5] During the hearing, an April 25, 2015 invoice from Green and Green, totaling $4,057.68, was admitted into evidence, and respondent testified that it was for obtaining Nina's will and responding to the petition to remove him as conservator. Respondent was not surcharged for this amount.

accounting or records to support such charges. As an initial matter, respondent merely asserts without providing any authority that he was entitled to a setoff or recoupment. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). A party abandons an issue by failing to address the merits of his or her assertions. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626; 750 NW2d 228 (2008). Although we may deem this issue abandoned, we choose to exercise our discretion and consider it.

"Unless specifically authorized by statute in a particular instance, setoff is a matter in equity based on equitable principles." *Mahesh v Mills*, 237 Mich App 359, 361; 602 NW2d 618 (1999), lv den 461Mich 996 (2000). We review de novo a lower court's decision whether to grant equitable relief. *Walker v Farmers Ins Exch*, 226 Mich App 75, 79; 572 NW2d 17 (1997). "Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other." *Id*.

> Recoupment is, in effect, a counterclaim or cross action for damages. Recoupment is also an affirmative defense that must be properly pleaded. The defense of recoupment is applicable to claims arising out of the same contract or transaction. The defendant bears the burden of proving that the plaintiff breached the contract from which the defendant seeks a setoff or recoupment. [*McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 694-695; 818 NW2d 410 (2012) (quotation marks and citations omitted).]

In his answer to the surcharge petition, respondent did not assert entitlement to a setoff or a recoupment. Respondent also did not file objections to the first and final accounting arguing that he had entitlement to reimbursement for expenses. Following the evidentiary hearing, in his closing statement filed with the probate court, respondent argued that he was entitled to a setoff or recoupment for expenses he incurred while caring for Nina, totaling $18,395.20.

The record reflects that the probate court did not order a surcharge requiring respondent to reimburse $10,000 to Nina's estate for the amount he paid himself for housing, food, utilities, care, and hired care while Nina lived in his home. Although respondent asserts entitlement to recoupment or a setoff for expenses incurred while he cared for Nina, he provided no documentation of those expenses. He testified that he purchased a mattress for $4,100 and a couch for $3,600 from Art Van as a result of Nina's bladder issues; however, he failed to submit Art Van receipts that substantiated the expense, but only a credit card statement. These expenses were not included in the accounting. The expenses for the bed and couch were also not included in respondent's final accounting. Respondent testified that the credit card invoice reflected the amount he paid for the mattress and the couch. Respondent also argues that he is entitled to a setoff amount of approximately $5,000 for adult diapers that he purchased for Nina; however, although respondent testified that he incurred such costs, he failed to provide any receipts or documentation for them. The probate court did not find respondent's testimony credible and found that respondent did not provide any records to support any basis for being reimbursed.

Based upon the record before us, we conclude that the probate court did not err when it found that respondent lacked entitlement to a setoff or recoupment for the alleged expenses because he failed to establish with supporting evidence that he paid for expenses incurred in the amounts he claimed. He failed to provide the probate court adequate receipts and documentation of the expenses to warrant the requested relief. Accordingly, the probate court did not err in this regard.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause